IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI I

| | | |
|---|---|---|
| STANDARD MUTUAL INSURANCE COMPANY, | ) ) ) | CV. NO. 09-00015  DAE/LEK |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| DAWNELLE R. SULLIVAN, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

On December 7, 2009, the Court heard Plaintiff's Motion.  Richard B.

Miller, Esq., appeared at the hearing on behalf of Plaintiff; Clay W. Valverde, Esq.,

and Teresa Tico, Esq., appeared at the hearing on behalf of Defendant.  After

reviewing the motion and the supporting and opposing memoranda, the Court

**GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion.

The Court GRANTS Plaintiff's Motion as to Sullivan's coverage

under the Auto Policy and Plaintiff's argument that it is not bound to arbitration of

any potential claims against Sullivan.  The Court DENIES Plaintiff's Motion as to

Sullivan's coverage under the Umbrella Policy and Sullivan's right to assign her interest thereunder.

BACKGROUND

The Court repeats the background facts only as is necessary for a decision on Plaintiff's Motion for Summary Judgment ("MSJ," Doc. # 17) in the discussion section below.  The essential facts of this case are not in dispute.

I.    The Accident

On or about February 27, 2008, Dawnelle R. Sullivan ("Sullivan"), was operating a rental car while vacationing on Kauai.  (Plaintiff Standard Mutual Insurance Company's Separate Concise Statement of Facts "PSF", Ex. 1 ¶ 1, Doc. # 18; Declaration of Catherine L. Wagner "Wagner Dec.," ¶¶ 5-6, Doc. # 18.)  The vehicle was involved in a collision (the "accident") with a moped operated by Charles Abraham ("Abraham").  Wagner Dec. ¶ 6.  Sullivan was making a left turn when she struck Abraham who was driving a moped across the intersection. (Kauai Police Report, Declaration of Teresa Tico "Tico Dec.", Ex. A, Doc. # 24.)  Sullivan and Wagner stated to the officer on scene that Abraham's moped's light was off when the rental car hit Abraham.  (Id.)

The vehicle had been rented from Alamo Rent-A-Car by Standard Mutual Insurance Company ("Standard") insured Catherine Wagner ("Wagner").

Wagner Dec. ¶ 7.  Wagner had arranged for Sullivan, who is a friend of hers and with whom she was traveling, to be added to the rental agreement as an authorized driver.  Id. ¶ 7.  Wagner was a passenger in the vehicle at the time of the accident. Id. ¶ 6.

Sullivan is not related to Wagner or her husband, Larry Wagner.  Id. ¶ 10.  Sullivan did not reside with the Wagners at the time of the accident.  Id. ¶¶ 11-12.  Nor was she a dependent of the Wagners.  Id.  Neither the Wagners nor anyone in their household owned the rental vehicle, nor was it provided for the regular use of Mr. or Mrs. Wagner or anyone in their household.  Id. ¶¶ 8-9.

Abraham allegedly suffered serious injuries as a result of the accident, and his counsel asserted a claim against Sullivan on Abraham's behalf.  (Tico Dec. ¶¶ 3-4.)  By letter dated June 9, 2009, counsel for Abraham, also counsel for Sullivan in the instant motion, notified Standard of the accident and provided Standard with an opinion letter that Abraham's moped lights started automatically and had been working approximately one week before the accident. (Id., Exs. B & C.) On or about June 27, 2008, Standard denied Sullivan coverage under Wagner's policies.  (Id., Ex. D.)

By letter dated July 7, 2008, Abraham's counsel tendered a settlement offer to Standard, stating that Wagner had negligently entrusted the rental vehicle

3

to Sullivan, knowing that Sullivan was not named as an additional driver, and

therefore Wagner was covered under the policy.  (<u>Id.</u>, Ex. E.)  By letter dated July

31, 2008, Standard responded to the settlement offer by denying any liability on

the part of Wagner.  (<u>Id.</u>, Ex. F.)  Sullivan was in fact an authorized driver on the

rental agreement for the vehicle driven by Sullivan on the day of the accident.

(Wagner Dec. ¶ 7.)  Sullivan does not dispute this fact in the instant motion.

(Opp'n at 2.)

 By letter dated January 8, 2009, Standard advised Abraham's counsel

that in addition to Wagner's Family Combination Automobile Policy ("Auto

Policy"), Standard had also issued Wagner a Personal Umbrella Liability Policy

("Umbrella Policy").  (<u>Id.</u>, Ex. I.)  Via this letter, Standard informed counsel for

Abraham that it was reserving its rights under the Umbrella Policy and would be

filing a declaratory judgment action to seek a determination of Standard's duties to

Sullivan, if any, under both policies. (<u>Id.</u>)

 On January 9, 2009, Standard filed its Complaint for Declaratory

Judgment against Sullivan asking for a declaration by this Court that Standard

owes no duty to defend and/or indemnify Sullivan, or to otherwise provide any

insurance coverage to her under the Umbrella Policy and/or the Auto Policy for

any claims, injuries, and/or damages which could be made in connection with the

4

accident.  (Compl. at 6-7, Doc. # 1.)  Standard also asked for costs and reasonable

attorneys fees.  (Id. at 7.)  On March 30, 2009, Standard filed its First Amended

Complaint ("FAC"), requesting the same relief.  (FAC at 10-11, Doc. # 9.)  On

April 3, 2009 Sullivan filed her Answer denying that Standard was entitled to such

relief.  (Doc. # 10.)

On September 22, 2009, Standard moved for summary judgment on

the ground that Sullivan is not an insured under either the Standard Auto Policy or

Umbrella Policy.  (MSJ at 2.)  On the same day, Standard submitted its Separate

Concise Statement of Facts.  (PSF, Doc. # 18.)  On November 19, 2009, Sullivan

filed her Memorandum in Opposition to Standard's Motion (Opp'n, Doc. # 23) and

filed her Separate Concise Statement of Facts.  ("DSF," Doc. # 24.)  On November

25, 2009, Standard filed its Response in Support of its Motion.  ("Resp.," Doc. #

26.)

II.   The Policies

A.   The Auto Policy

At the time of the accident, Ms. Wagner was a named insured under a

Standard Mutual Family Combination Automobile Policy, No. APV 1911406 (the

"Auto Policy").  (Standard Auto Policy, Declaration of Joe Macklin "Macklin

Dec.," Ex. 1 ¶ 3, Doc. # 18.)   The Auto Policy provided liability coverage with

5

stated liability limits in the amount of $500,000 per occurrence.  (Macklin Dec.,"

Ex. 1.)  The Auto Policy included the following relevant language:

> **[Standard] Agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of premium . . . and  subject to all of the terms of this policy:**
>
> ## PART I – LIABILITY
>
> **Coverage A – Bodily Injury Liability; Coverage B – Property Damage Liability:** To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of: A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by any person; B. injury to or destruction of property, including loss of use thereof, hereinafter called "property damage";
> arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent . . . .
> ….
> **Persons Insured:** The following are insured under Part I:
> ….
> (b) with respect to a non-owned automobile,
> > (1)   the named insured,
> > (2)   any relative, but only with respect to a private passenger automobile or trailer . . . , and
> > (3)   any other person or organization not owning or hiring the automobile, but only with respect to his or its liability because of acts or omissions of an insured under (b), (1) or (2) above.
>
> ….

6

**Definitions:** Under Part I:

"**named insured**" means the individual named in Item 1 of the declarations and also includes his spouse, if a resident of the same household;

"**insured**" means a person or organization described under "Persons Insured";

"**relative**" means a relative of the named insured who is a resident of the same household;
….

"**non-owned automobile**" means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile.

The Auto Policy is subject to the following relevant conditions:

## CONDITIONS

….

5. **Assistance and Cooperation of the Insured – Parts I and III:**
The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of bodily injury, property damage or loss with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trial and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident.

….

> **15. Assignment:** Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; if, however, the insured named in item 1 of the declarations, or his spouse if a resident of the same household, shall die, this policy shall cover (1) the survivor as named insured (2) his legal representative as named insured but only while acting within the scope of his duties as such, (3) any person having proper temporary custody of an owned automobile, as an insured, until the appointment and qualification of such legal representative, and (4) under division 1 of Part II any person who was a relative at the time of such death.

(Macklin Dec.,  Ex. 1.)

      B.    The Umbrella Policy

Also at the time of the accident, Ms. Wagner was a named insured under a Standard Mutual Personal Umbrella Liability Policy, No. U 0009019 01 (the "Umbrella Policy").  (Standard Umbrella Policy, Macklin Dec., Ex. 2 ¶ 4, Doc. # 18.)  The Umbrella Policy provided liability coverage with stated liability limits in the amount of $1,000,000 per occurrence.  (Macklin Dec., Ex., 2.)  The Umbrella Policy included the following relevant language:

**PART I – DEFINITIONS**

> In this policy, "you" and "your" mean the "named insured" in the Declarations and spouse if a resident of your household. . . .

….

6.      "**insured**" means you and

    a.      the following residents of your household:
        (1) your relatives;
        (2) any person under age 21 in your care;

….

but with respect to autos, watercraft and recreational vehicles, only as stated below:

    c.      a person using an auto, watercraft or recreational vehicle (with your permission) owned by, loaned to or hired for use by you or on your behalf[.]

    e.      any other person or organization with respect only to legal liability for acts or omissions of:
        (1) an insured under 6(c) above[.]

….

## PART II – COVERAGE

We pay damages on behalf of the insured, subject to the Exclusions and Limits of Liability.

….

## PART V – DEFENSE COVERAGE

If a claim is made or a suit is brought against an insured for personal injury or property damage covered by this policy, we will defend the insured at our expense, with lawyers of our choice, unless there is underlying insurance or other applicable insurance. Where there is underlying or other applicable insurance, we are not required to take charge of the investigation, defense or settlement of a claim or suit, but have

9

the right at any time to join the insured or the underlying insurers in the investigation, defense and settlement of said suit or claim. If the underlying insurance limit is paid, we will assume charge of the settlement or defense of any claim against the insured. We may investigate and settle a claim or suit as we deem appropriate. We are not obligated to defend after we have paid an amount equal to the limits of our liability.

….

## PART VI – CONDITIONS

    1.    **Duties After Occurrence, Claim or Suit.**

        a.    Upon the happening of an occurrence likely to involve us, written notice shall be given as soon as practicable to us or any of our authorized agents. Such notice shall contain:

            1.    how, when, and where the occurrence took place; and

            2.    names and addresses of the injured persons and all witnesses.

….

        c.    The insured must cooperate with us in the investigation, defense and settlement of a claim or suit.

....

    6.    **Assignment.** Your rights and duties under this policy shall not be assigned without our written consent.

(Macklin Dec.,  Ex. 2.)

C.    The MetLife Policy

At the time of the accident, Ms. Sullivan was herself the named insured under an automobile insurance policy issued by Metropolitan Property and Casualty Insurance Company ("MetLife") that afforded bodily injury ("BI") liability coverage with limits of $100,000.  (Agreement, Declaration of Joseph Kotowski "Kotowski Dec.," Ex. 3 at 1.)

III.    Agreement Between Sullivan and Abraham

Sullivan and her insurer, MetLife, entered into an agreement dated October 2, 2008 with Abraham and his spouse, Bonnie Abraham, which, in pertinent part, provided that (1) MetLife agreed to pay its liability limit of $100,000 to the Abrahams; (2) the Abrahams and Sullivan agreed to binding arbitration of the Abrahams' claims against Sullivan; (3) the Abrahams agreed not to execute against Sullivan's personal assets to satisfy any arbitration award in excess of MetLife's liability limit; and (4) Sullivan agreed to assign to the Abrahams all rights she may have to coverage under any other insurance policy applicable to the accident. (Kotowski Dec., Ex. 3 at 1-9.)

Standard was advised of the agreement between Sullivan, MetLife and the Abrahams in February, 2009.  (See MSJ at 8; Opp'n at 10.)  Standard offered to

assume Ms. Sullivan's defense of the Abrahams' claims, pursuant to a reservation of rights.  (Id.)

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine

12

issue for trial" and may not rely on the mere allegations in the pleadings.   Porter,

419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986)).  If the nonmoving party produces direct evidence of a material fact, the

court may not assess the credibility of this evidence nor weigh against it any

conflicting evidence presented by the moving party.  The nonmoving party's

evidence must be taken as true.  T.W. Electrical Service, Inc. v. Pacific Electrical

Contractors Ass'n, 809 F.2d 626, 632 (9th Cir. 1987) (internal citations omitted).

However, the nonmoving party may not rely on the mere allegations

in the pleadings in order to preclude summary judgment.  Instead, the nonmoving

party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts

showing that there is a genuine issue for trial. Id. at 630 (citation omitted)

(emphasis added).  The opponent "must do more than simply show that there is

some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the factual context makes the

non-moving party's claim or defense implausible, the party must come forward

with more persuasive evidence than would otherwise be necessary to show that

there is a genuine issue of trial.  Id. at 587.

DISCUSSION

Standard claims it is entitled to summary judgment on the ground that Sullivan is not an insured under either the Auto or Umbrella policies held by Wagner.  (MSJ at 2.)  Standard further argues that if Sullivan is found to be an insured, that Standard is not bound by Sullivan's agreement with MetLife and the Abrahams as to the assignment of coverage rights or arbitration of claims.  (Id. at 16-17.)

Sullivan claims that she is an insured under both polices and that Standard is obligated to defend and indemnify her.[1]  (Opp'n at 1.)  Further, Sullivan states that agreement between Sullivan and the Abrahams does not affect Standard's obligation to provide coverage in the underlying matter.  (Id.)

_____

[1] In her opposition, Sullivan seeks a ruling from this court that "under the subject policies she is an insured and Standard is obligated to defend and indemnify her, and further, that the subject agreement to arbitrate and assign claims has no effect on Standard's obligation to provide coverage in the underlying matter."  (Opp'n at 1.)  As the nonmoving party, Sullivan may not have summary judgment issued in her favor.  This Court may simply grant or deny summary judgment in favor of the moving party, here Standard.  See Fed. R. Civ. P. 56(c)(2) ("The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.") (emphasis added).

State law governs the resolution of substantive issues in this diversity action.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1090 (9th Cir. 2001).

Under Hawaii law, construction of a contract, where material facts are undisputed, is a question of law for the court.  See National Union Fire Ins. Co. v. Reynolds, 889 P.2d 67, 71 (Haw. App. 1995); Cho Mark Oriental Food v. K & K International, 836 P.2d 1057, 1064 (Haw. 1992).  Thus, summary judgment is appropriate when the court determines, as a matter of law, that the terms of an insurance policy do not provide coverage.  See Crawley v. State Farm Mutual Automobile Ins. Co., 979 P.2d 74, 78 (Haw. App. 1999); Foote v. Royal Ins. Co. of America, 962 P.2d 1004, 1008 (Haw. 1998).

Insurance policies are subject to the general rules of contract construction.  Dawes v. First Ins. Co. of Hawai'i, 883 P.2d 38, 42 (Haw. 1994). The terms of insurance policies must be interpreted according to their plain, ordinary and accepted sense in common speech, unless it appears from the language of the policies that a different meaning is intended.  Id.  Insurance polices are contracts of adhesion and must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer.  Tri-S Corp. v. Western World Ins. Co., 135 P.3d 82, 98 (Haw. 2006) (citation omitted).

15

Insurance policies must be construed in accord with the reasonable expectations of a layperson.  Id.

An "[a]mbiguity exists . . . only when the [policy] taken as a whole, is reasonably subject to differing interpretation.  Absent an ambiguity, the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech . . . ."  Oahu Transit Services, Inc. v. Northfield Ins. Co., 112 P.3d 717, 722 n.7 (Haw. 2005) (brackets in original) (citation omitted).  "Liability insurers have the same rights as individuals to limit their liability, and to impose whatever conditions they please on their obligation, provided they are not in contravention of statutory inhibitions or public policy." Liberty Mut. Ins. Co. v. Sentinel Ins. Co., Ltd., 205 P.3d 596, 614-615 (Haw. App. 2009).

An insurer's duty to defend is contractual in nature.  Commerce & Indus. Ins. Co. v. Bank of Hawaii, 832 P.2d 733, 735 (Haw. 1992) (citation omitted).  An insurer's duty to defend arises whenever there is a potential for coverage, and thus does not depend on whether liability is ultimately established. Id.  Under the "complaint allegation rule," the duty to defend is determined at the time that the defense is tendered to the insurer or the insurer otherwise is on notice that a complaint has been filed against its insured.  See, e.g., Dairy Road Partners

v. Island Insurance Co. Ltd., 992 P.2d 93, 108-16 (2000); Commerce & Indus. Ins. Co., 832 P.2d at 735.  The potential insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot."  Dairy Road Partners, 992 P.2d at108-16.

Where the pleadings fail to allege any basis for recovery within the coverage of the subject policy, the insurer has no obligation to defend.  Hawaiian Holiday Macadamia Nut Co. v. Indust. Indem. Co., 872 P.2d 230, 233 (Haw. 1994) (citation omitted).  An insurer's duty to defend is not triggered by an insured's speculation about the facts or claims that a plaintiff might plead.  See Allstate Ins. Co. v. Pruett, 186 P.3d 609, 623 (Haw. 2008); see also Sony Computer Entertainment America, Inc. v. American Home Assur. Co., 532 F.3d 1007, 1020 (9th Cir. 2008) (An insured "may not speculate about unpled third party claims to manufacture coverage.") (quotation omitted); The Upper Deck Co., LLC v. Federal Ins. Co., 358 F.3d 608, 615 (9th Cir. 2004) ("An insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date.") (quotation omitted).

17

I.    <u>The Auto Policy</u>

Standard claims that the plain language of the Auto Policy excludes Sullivan from coverage.  (MSJ at 13-14.)  In so claiming, Standard asserts that Wagner is not liable for the acts or omissions of Sullivan.  (<u>Id.</u>)  Sullivan contends that an act or omission of Wagner might have contributed to or caused the accident.  (Opp'n at 14.)  Specifically, Sullivan claims that coverage may exist under the Auto Policy, and there is a genuine issue of material fact remaining, because: 1) the cause of the accident is unknown; 2) it is unknown whether Wagner and Sullivan consumed alcoholic beverages that evening; 3) Wagner may be liable for causing the accident or causing Sullivan to have the accident; 4) Wagner may have negligently entrusted the vehicle to Sullivan; 5) Wagner gave control of the vehicle to Sullivan; and 6) Sullivan has not had a chance to interview Wagner.

The Auto Policy defines an "insured," with respect to the use of a nonowned automobile, as (1) the named insured, (2) any relative, but only with respect to a private passenger automobile or trailer . . . , and (3) any other person or organization not owning or hiring the automobile, but only with respect to his or its liability because of acts or omissions of an insured under . . . (1) or (2) above. (Macklin Dec., Ex. 1.)

18

Sullivan is not a named insured under the Auto Policy. She is also not a relative of a named insured. Therefore, by the plain terms of the Auto Policy, Sullivan may only come under the definition of an "insured" if she is liable because of the acts or omissions of Wagner. (<u>See</u> Macklin Dec., Ex. 1., Persons Insured (b)(3).)

Sullivan has failed to raise a genuine issue of material fact as to whether her liability, if any, to the Abrahams arises out of any act or omission of Wagner. Sullivan's attempts to manufacture disputed material facts are unavailing. Sullivan fails to submit any evidence supporting her theories, which amount to little more than far fetched speculation, and for which evidence is required by Rule 56(c).

This is not a case where coverage defenses and exclusions turn on matters at issue in the underlying lawsuit and cannot be resolved in a coverage suit while the underlying matter is pending. <u>Dairy Road</u>, 992 P.2d at 117. Sullivan herself would be aware of, and could submit a declaration regarding, whether Wagner and Sullivan consumed alcoholic beverages prior to the accident. Sullivan would also be able to submit a declaration regarding any act or omission of Wagner's that may have contributed to or caused the accident. Yet Sullivan failed to submit any declaration regarding Wagner's alleged acts or omissions and fails to

19

even offer a theory of how Wagner may have contributed to the accident in her

opposition to Standard's motion.  Without more, Sullivan fails to present a genuine

issue of material fact.

As to Sullivan's other attempts to create the appearance of genuine

disputed material facts, Sullivan's claim that Wagner's act of giving control of the

vehicle to Sullivan could be an act or omission that caused Sullivan to be liable

without more evidence is simple conjecture.  Likewise, Sullivan's claim that it is

possible that Wagner negligently entrusted the vehicle to Sullivan is not supported

by any facts.  Sullivan does not dispute that the rental contract specifically

authorized her to operate the vehicle, and this appears to be the only ground on

which this claim could have rested.  (See Tico Dec., Ex. F.)

Sullivan appears to be seeking to manufacture coverage for herself by

speculating about the facts and/or theories that Abraham might plead at some point

in the future.  However, Sullivan provides no factual basis for her assertions, and

she cannot defeat Standard's motion with conjecture and conclusory statements.

See Matsushita Elec. Indus. Co., 475 U.S. at 586-87 & n. 11 (conclusory

allegations in declaration, unsupported by facts, cannot defeat summary judgment).

For the reasons above, the Court finds that Sullivan is not an insured under the

Auto Policy.  Accordingly, the Court GRANTS Standard's motion for summary judgment as to the Auto Policy.

II.     The Umbrella Policy

Standard argues that the plain language of the Umbrella Policy excludes Sullivan from coverage.  (MSJ at 14-16.)  In opposition, Sullivan argues that the plain language of the Umbrella Policy provides coverage for Sullivan. (Opp'n at 16-20.)

The Umbrella Policy extends liability coverage to resident relatives and dependent persons in the named insured's household under the age of 21. (Macklin Dec., Ex. 2.)   However, the definition provides further that with respect to liability arising from the use of an automobile, an insured (i.e., a named insured, relative or dependent person under 21) is covered only if the automobile is owned by, loaned to or hired for use by the named insured:

6.     "**insured**" means you and

  a.     the following residents of your household:
    (1) your relatives;
    (2) any person under age 21 in your care;

…

 but with respect to autos, watercraft and recreational vehicles, only as stated below:

      c.       a person using an auto, watercraft or recreational
vehicle (with your permission) owned by, loaned
to or hired for use by you or on your behalf[.]

(Id.)

Standard argues that coverage for use of a nonowned vehicle is

afforded only for named insureds, a relative of a named insured, or a person under

the age of 21 in the named insured's care.  (MSJ at 15-16; Resp. at 2, 7-10.) In

support, Standard states:

> If, in fact, 6.c, 6.d and 6.e are not intended to relate back to 6.a, then
> why include the intervening phrase at all? Subparagraphs 6.c, 6.d and
> 6.e could stand on their own, and indeed would appear to be complete,
> without the intervening phrase "but with respect to autos, watercraft
> and recreational vehicles, only as stated below." The only reason to
> include the phrase is to signal that the succeeding sections relate back
> to the first.

 (Resp. at 2, 7-10.)  At the December 7, 2009 hearing on Standard's motion,

counsel for Standard clarified its argument by stating that insured definition's

intervening phrase acted as a restrictive clause further limiting subparagraphs 6.a

and 6.b. with respect to autos, watercraft and recreational vehicles.

In opposition, Sullivan argues that the intervening phrase is only

restrictive in the sense that it causes 6.c, 6.d and 6.e to stand alone, and the plain

language of the definition of "insured" therefore includes a person using an auto,

watercraft or recreational vehicle (with the named insured's permission) owned by,

22

loaned to or hired for use by named insured or on the named insured's behalf. (Opp'n at 17-19.)  The Court agrees.

Standard's argument ignores the plain language of the intervening phrase and the structure of the insured definition.  Paragraph 6 defines an "insured" to mean "you [Wagner] <u>and</u> . . . ." (emphasis added), and then lists five subparagraphs, 6.a-e, which each define a separate category of insured additional to "you."  Subparagraph 6.a is at the same level as 6.c and is therefore, under basic principles of construction, not controlling over 6.c unless expressly stated.

Further, the plain language of the intervening phrase does not indicate in any way that the below subparagraphs relate back to subparagraph 6.a. or are further restrictive of subparagraphs 6.a or 6.b.  Instead, the intervening phrase clearly delineates that subparagraphs 6.c, 6.d and 6.e stand on their own and are the only subparagraphs applicable to "autos, watercraft and recreational vehicles"; <u>i.e.</u> with respect autos, watercraft or recreational vehicles, persons additional to the named insured must qualify under subparagraphs 6.c-e and need not qualify under subparagraphs 6.a or 6.b.  This is opposite the conclusion argued by Standard.

At best for Standard, the language of the insured definition could be viewed as ambiguous.  However, even viewing the language as ambiguous, any ambiguity must be construed against the insurer.  <u>See</u> <u>Tri-S Corp.</u>,135 P.3d 82, 98

(Haw. 2006) (Insurance polices are contracts of adhesion and must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer) (citation omitted).

It is undisputed that Sullivan is not a named insured under the Umbrella Policy, that she is not a relative of the named insureds, the Wagners, and that she is not someone under the age of 21 in their care.  (<u>Compare</u> PSF <u>with</u> Opp'n at 2.)  However, as explained above, the language of the Umbrella Policy does not limit coverage to the factors enumerated by Standard.  Subparagraph 6.c, applicable to automobiles, applies to Sullivan's accident.

In this case, subparagraph 6.c specifically refers to <u>a person </u>other than the insured; there is no dispute that Sullivan meets this definition.  (Macklin Dec., Ex. 2, Definitions, 6(c).)  Wagner hired the rental car for her own use as is demonstrated by her designation of herself as the primary driver on the rental contract.  (Wagner Dec. ¶ 7.)  Permission by Wagner for use of the vehicle by Sullivan is evidenced by both the fact that Wagner named Sullivan as an additional driver on the rental contract and was a passenger in the vehicle with her at the time of the accident.  (<u>Id.</u> ¶¶ 6-7.)  Therefore, Sullivan qualifies as an insured under the Umbrella Policy.

As to Standard's duty to provide the defense of an insured, the

Umbrella Policy provides, in relevant part, as follows:

> Where there is underlying or other applicable insurance, we are not
> required to take charge of the investigation, defense or settlement of a
> claim or suit, but have the right at any time to join the insured or the
> underlying insurers in the investigation, defense and settlement of said
> suit or claim. If the underlying insurance limit is paid, we will assume
> charge of the settlement or defense of any claim against the insured.

(Macklin Dec., Ex. 2 at 4.)

Standard does not argue that the accident would be excluded from the

Umbrella Policy if Sullivan was to qualify as an insured.  It is undisputed that Ms.

Sullivan was covered under her MetLife policy, with BI liability coverage of

$100,000.00.  Therefore, under the policy, Standard did not have a duty to assume

Sullivan's defense until and unless the limits of her MetLife policy were

exhausted.   However, in this case, the MetLife BI limit has been paid (as recited in

the agreement between Sullivan, MetLife and the Abrahams).[2]  (See Kotowski

Dec., Ex. 3.)

For the reasons stated above, Sullivan qualifies as an insured under

the Umbrella Policy and is entitled to a defense and/or indemnity from Standard in

---

[2] The Court notes that the agreement between Sullivan, MetLife and the
Abrahams also provides that MetLife will be providing Sullivan with a defense.  It
is for MetLife and Standard to determine how this defense shall proceed.

connection with the accident.  Accordingly, the Court DENIES Standard's motion for summary judgment as to coverage under the Umbrella Policy.

III.    The Agreement Between Sullivan, MetLife and Abraham

Because this Court has determined that Sullivan is an insured under Wagner's Umbrella Policy with Standard, the Court will address the effect of the agreement between Sullivan, MetLife and the Abrahams (the "Agreement") on Standard's coverage of Sullivan under that policy.

Standard argues that it is not bound by the Agreement as to arbitration of claims or Sullivan's assignment of coverage rights.  (MSJ at 16-17.)  Sullivan does not claim that Standard is bound by the agreement to arbitrate claims, but instead states only that it is "ironic that . . . Standard should be immune from an agreement made to fairly and efficiently resolve claims Standard refused to cover and made partly as a result of such refusal."  (Opp'n at 21.)  Sullivan also failed to argue that Standard was bound to the Agreement's arbitration provision at the December 7, 2009 hearing.  Sullivan, however, contends that she has the right to assign her rights under the Umbrella Policy.

A.    Agreement to arbitrate

"Arbitration is a matter of contract; so a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. " Sher v.

Cella, 160 P.3d 1250, 1254 (Haw. App. 2007) (internal quotations and citations omitted).

The parties agree that Standard was not a signatory to the Agreement. Also, by virtue of the fact that it was denying coverage, Standard was not even aware of Sullivan's intent to enter into the Agreement and Sullivan did not obtain Standard's consent in doing so.  At that time, Sullivan's defense was being provided and controlled by her own auto insurer, MetLife.  Therefore, there is no basis to bind Standard to the Agreement's requirement that all claims be submitted to arbitration.

    B.    Assignment of rights

Sullivan argues that because the Umbrella Policy's Conditions of Assignment only refer to "Your rights," "your" being defined as the "named insured" as opposed to the "insured."  (Id.)  Therefore, Sullivan argues, the assignment condition does not apply to her, and she may assign her rights under the Umbrella Policy so long as such assignment does not conflict with other provisions of the policy.  (Id.)  The Court agrees.

An insurer's duties of defense and indemnity are not separable from an insurance contract and may not be assigned without an insurer's consent if the

insurance contract contains an anti-assignment provision.  <u>Del Monte Fresh</u>

<u>Produce, Inc. v. Fireman's Fund Ins. Co.</u>, 183 P.3d 734, 747 (Haw. 2007); Haw.

Rev. Stat. § 431:10-228(a) (providing that "[a] policy may be assignable or not

assignable, as provided by its terms").

      The Umbrella Policy provides:

**PART VI – CONDITIONS**

    ....

          6.    **Assignment.** Your rights and duties under this
policy shall not be assigned without our written
consent.

(Macklin Dec., Ex. 2 at 5.) "Your" is defined under the Umbrella Policy as "the

'named insured' in the Declarations and spouse if a resident of your household."

(<u>Id.</u> at 1.)  Standard admits, and in fact argues, that Sullivan is not a named insured.

(Mot. at 16.)  Therefore, the plain language of the Assignment clause of the

Umbrella Policy does not bar Sullivan from assigning her rights thereunder.

      At very best for Standard, the language of the Assignment clause

could be viewed as ambiguous.  However, even viewing the language as

ambiguous, any ambiguity must be construed against the insurer.  <u>See</u> <u>Tri-S</u>

Corp., 135 P.3d 82, 98 (Haw. 2006) (Insurance polices are contracts of adhesion and must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer) (citation omitted).

Although liability insurers have the same rights as individuals to limit their liability, and to impose whatever conditions they please on their obligation, Standard failed to provide such a condition on Sullivan in this case.  See Liberty Mut. Ins. Co., 205 P.3d at 614-615.  Accordingly, the Court DENIES Standard's Motion for Summary Judgment on the ground that Standard is not bound by Sullivan's assignment of her interest under the Umbrella Policy.

## CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion.

The Court GRANTS Plaintiff's Motion as to Sullivan's coverage under the Auto Policy and Plaintiff's argument that it is not bound to arbitration of any potential claims against Sullivan.  The Court DENIES Plaintiff's Motion as to

Sullivan's coverage under the Umbrella Policy and Sullivan's right to assign her

interest thereunder.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 9, 2009.



_____
David Alan Ezra
United States District Judge

Standard Mutual Ins. Co. v. Sullivan, CV. NO. 09-00015  DAE/LEK; ORDER
GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT